## 49553. PETERS v. WASHINGTON LOAN & BANKING COMPANY.

CLARK, Judge.

This case presents a mishmash of entangled notes and collateral securities involving a divorced husband and wife in making loans from a bank. We unravel these dealings as follows:

On March 1, 1971, Janice Peters (formerly Janice Lee) executed a promissory note to the Washington Loan & Banking Company for $2,479.68. Her loan was secured by a security deed on land and a bill of sale to secure debt on a mobile home. Seventeen months later, on August 1, 1972, the bank transferred the promissory note and security instruments to Paul Lee, the borrower's former husband without informing her as to the transfer. On that same day the bank reacquired the note and collateral securities when Paul Lee assigned them to the bank as security for debts which he then owed and might thereafter owe to the bank.

Prior to the date of the transfers, a balance of $1,584.24 remained owing on the original Peters promissory note. However, an examination of the bank's ledger sheet of Janice Peters reflects two credits were entered on August 1, 1972, one for $1,484.24 and another for $100, thus showing a zero balance. Janice Peters testified that shortly after these transactions between the bank and her former husband, of which she was unaware, she undertook to make payment on her original obligation but was informed no further payments were owed. No demand for payment was made upon her by the bank until March of the following year.

On November 7, 1972, Paul Lee refinanced two previous personal bank loans by executing a promissory note to the bank for $1,970.64. When Lee subsequently

defaulted on this note, the bank brought suit against Lee and Janice Peters for a balance of $1,811.34 owing on that last Lee loan and for sale of the former wife's collateral which had been transferred by Lee as security with the proceeds of such sale to be applied towards the husband's debt. The defendant former husband acknowledged service of process but did not file any defensive pleadings. No judgment has yet been taken against him. Janice Peters answered and in addition to denying any debt as being owed by her contended the various dealings recited herein constituted an exoneration of any obligation by her to the bank. At the conclusion of the trial the plaintiff's motion for a directed verdict as to the amount of $1,449 balance that had never been paid was directed "to be made out of the security." Following the denial of her motion for new trial this appeal has been taken. *Held:*

1. Code Ann. § 109A-9—502 (1) provides: "When so agreed and in any event on default the secured party is entitled to notify an account debtor or the obligor on an instrument to make payment to him whether or not the assignor was theretofore making collections on the collateral, and also to take control of any proceeds to which he is entitled under 109A-9—306." The Official Code Comment notes that "this Section recognizes the fact that financing by assignment of intangibles lacks many of the complexities which arise after default in other types of financing, and *allows the assignee to liquidate in the regular course of business by collecting whatever may become due on the collateral, whether or not the method of collection contemplated by the security arrangement before default was direct (i.e., payment by the account debtor to the assignee, 'notification' financing) or indirect (i.e., payment by the account debtor to the assignor, 'non-notification' financing).* By agreement, of course, the secured party may have the right to give notice and to make collections before default." (Emphasis supplied.) Since the assignor, Lee, subsequently defaulted on his November 7, 1972 promissory note, the secured party, the bank, was thereupon entitled to make collections on the collateral regardless of whether the method of collection contemplated by the August security agreement was direct or indirect. The court did not err

therefore in directing a verdict for the plaintiff bank since the evidence disclosed that Janice Peters still owed a balance despite the ledger sheet zero entry. The bank, as the security party, was entitled to make collections on her obligation. "[W]here there is no conflict in the evidence, and that introduced with all reasonable deductions or inferences therefrom, shall demand a particular verdict, the court should direct the jury to find for the party entitled thereto." *Barnett v. Thomas,* 126 Ga. App. 587 (191 SE2d 450).

Our result is not inconsistent with pre-Uniform Commercial Code authorities. See, e.g., *Houser v. Houser,* 43 Ga. 415, in which it was held: "When a note is placed in the hands of a party as collateral security, the holder thereof has the legal right to maintain a suit thereon in his own name, and to obtain judgment thereon. . ." And see, *Johnston v. Gulledge,* 115 Ga. 981 (42 SE 354).

2. The result here is to apply the proceeds from the judicial sale of the appellant's collateral land and mobile home towards the amount of the judgment which will be taken against the former husband upon whom still remains the obligation he made to repay the bank the loans made to him.

*Judgment affirmed. Bell, C. J., and Quillian, J., concur.*

ARGUED JULY 1, 1974 — DECIDED OCTOBER 15, 1974 — REHEARING DENIED NOVEMBER 8, 1974.

*Walton Hardin,* for appellant.
*Lawson E. Thompson,* for appellee.